IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**MELINDA A. DANGERFIELD,**

    **Plaintiff,**

v.                                                      Civil Action No. 3:22-cv-00088
                                                              Judge:

**ICP MEDICAL, LLC,**
a Delaware Limited Liability Company, and
**CONCORDANCE HEALTHCARE SOLUTIONS
LLC,** a Delaware Limited Liability Company,

    **Defendants.**

## COMPLAINT

Plaintiff Melinda A. Dangerfield for her *Complaint* against the Defendants, states as follows:

## PARTIES

1. Plaintiff Melinda A. Dangerfield is, and at all times relevant herein was, a resident and citizen of Putnam County, West Virginia.

2. Defendant ICP Medical, LLC ("ICP Medical") is a member-managed Delaware limited liability company with membership residing in the State of Tennessee. At all relevant times, ICP Medical was in the business of manufacturing, modifying and/or altering, fabricating, designing, packaging, shipping, selling, and/or distributing shoe covers.

3. Defendant Concordance Healthcare Solutions LLC ("Concordance") is a member-managed Delaware limited liability company with membership residing in the State of Ohio. At all relevant times, Concordance was in the business of modifying and/or altering, packaging, shipping, selling, and/or distributing shoe covers.

## JURISDICTION and VENUE

4. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000.00, exclusive of costs and interest, and involves citizens of different states.

5. Defendants availed themselves to the jurisdiction of this Court pursuant to W. Va. Code § 56-3-33 and W. Va. Code § 31D-15-1501(d)(3), by doing, personally and through its agents, the following acts:

   a. Committing a tortious act within this state by selling and/or delivering a defective product for placement into the West Virginia stream of commerce for ultimate users;

   b. By selling, distributing, assembling and/or servicing its products, including the subject shoe covers, to or for persons, firms and/or corporations in this state *via* its distributors, wholesalers, and brokers. Such products, including the subject shoe covers, were used by West Virginia consumers in the ordinary course of commerce and trade;

   c. By deriving substantial revenues in this state;

   d. The acts or omissions of the Defendants caused injuries to persons in West Virginia, including the plaintiff, Ms. Dangerfield;

   e. By engaging in the solicitation of activities in West Virginia to promote the sale, consumption, use, maintenance and distribution of Defendants' products, including the subject shoe covers, which is the subject of this Complaint; and

   f. By selling, distributing or assembling Defendants' products, including the subject shoe covers which are the subject of this Complaint, with knowledge or reason to foresee that Defendants' products, including the subject shoe covers, would be shipped in interstate commerce and would reach the market of West Virginia users or consumers.

6. Venue is proper in the United States District Court for the Southern District of West Virginia pursuant to 28 U.S.C. § 1391(a) as a substantial portion of the events giving rise to the claims herein took place in Cabell County, West Virginia, which is within the judicial district of this Court.

**FACTS**

7. Ms. Dangerfield is a registered nurse who, at all relevant times, was employed at the Hershel "Woody" Williams VA Medical Center in Huntington, West Virginia (the "VA Hospital")

8. As a result of the ongoing Covid pandemic, the VA Hospital has a dedicated Covid ward. Ms. Dangerfield would regularly work in the ward, providing care to patients diagnosed with Covid.

9. To contain the spread of Covid, VA Hospital personnel staffing the Covid ward were required to wear extensive, single-use personal protective equipment, including shoe covers. This personal protective equipment, including the shoe covers, was provided by the VA Hospital to its personnel.

10. The VA Hospital procured the shoe covers used in the Covid ward from ICP Medical, with Concordance delivering the shoe covers to the VA Hospital. Specifically, the VA Hospital purchased ICP-SCNS0003 Universal shoe covers (the "subject shoe covers"). The subject shoe covers were described as having a "non-skid pattern," leading the purchaser and end user to believe that the subject shoe covers were non-skid. The subject shoe covers were procured for the specific purpose of providing them to the staff in the VA Hospital's Covid ward which was known to the Defendants.

11. Upon information and belief, the subject shoe covers were never tested to determine the slip resistance they provided to the end user, as measured by the coefficient of friction ascertainable through established testing procedures. Despite not knowing whether the subject shoe covers were indeed non-skid, Defendants sold and/or distributed the subject shoe covers with no warnings regarding the potential loss of slip resistance otherwise provided by the end user's traditional footwear.

12. On June 28, 2021, Ms. Dangerfield began her night shift in the Covid ward at the VA Hospital. At the beginning of her shift, Ms. Dangerfield put on the subject shoe covers, as was required for the Covid ward. The subject shoe covers enclosed her traditional shoes, which were slip-resistant work shoes manufactured by Crocs. Upon information and belief, Ms. Dangerfield's Crocs had been tested and found to provide significant slip resistance for the end user. As such, when Ms. Dangerfield put the subject shoe covers over her Crocs, the effective slip resistance her footwear provided was reduced.

13. As the shift progressed into June 29, 2021, Ms. Dangerfield was in a patient's room collecting food trays. As she went to turn around, she planted her left foot. Because the subject shoe covers provided no slip resistance—despite being advertised as "non-skid"—Ms. Dangerfield's left foot slipped out from underneath her, causing her to fall hard on her left side.

14. As a direct and proximate result of the fall, Ms. Dangerfield suffered severe injuries, including but not limited to impact injuries to her left hip and shoulder, and damage to her left ulnar nerve. As a result of the nerve damage, Ms. Dangerfield lives with consistent pain and numbness in her left hand, ranging from the tips of her fingertips up the left arm.

15. As the injuries set forth herein were caused by the conduct of the Defendants, Defendants are liable to Plaintiff for all damages, including but not limited to:

    a.       pain and suffering, including mental anguish and psychological injuries;

    b.       past and future medical expenses;

    c.       past and future lost income and earning capacity;

    d.       past and future lost services, protection, care and assistance;

    e.       loss of society, companionship, and consortium; and,

    f.       other damages incurred as a result of Defendants' conduct.

## COUNT I
### (Breach of Warranty – All Defendants)

16.    Plaintiff repeats and incorporates here by reference the allegations contained in paragraphs 1 through 15 of this Complaint as if set forth herein verbatim.

17.    Defendants, at all times material hereto, by and through the sale of the subject shoe covers, expressly and impliedly warranted to users through their actions, representations, promises, affirmations, promotions, product literature, photographs and promotional material, to all prospective consumers and the public generally, including Ms. Dangerfield, that the subject shoe covers which Defendants (individually or in combination) designed, manufactured, sold, marketed and/or distributed was of such quality and reasonably fit for the purpose of serving as safe and suitable footwear.

18.    Ms. Dangerfield made use of the subject shoe covers as alleged herein and relied on the express and implied warranties made by Defendants through their actions, representations, promises, affirmations, promotions, product literature, photographs and promotional material that the subject shoe covers were fit for the purpose of serving as a safe and suitable footwear.

19.    Defendants breached their express and implied warranties of fitness and merchantability by defectively designing, manufacturing, selling, marketing and/or distributing the subject shoe covers which were unreasonably dangerous for the use to which they were

intended as reflected throughout Defendants' actions, representations, promises, affirmations, promotions, product literature, photographs and promotional material.

20. Defendants further breached their express and implied warranties of fitness and merchantability by failing to warn and/or instruct users, purchasers, the public, and others, including Ms. Dangerfield, concerning the dangerous characteristics of the subject shoe covers when used in a reasonably foreseeable manner.

21. Defendants' breach of warranties (either individually or in combination) as described herein directly and proximately caused the injuries sustained by Ms. Dangerfield.

## COUNT II
**(Negligent Design, Manufacture, Warning and Distribution – All Defendants)**

22. Plaintiff repeats and incorporates here by reference the allegations contained in paragraphs 1 through 21 of this Complaint as if set forth herein verbatim.

23. Defendants owed Ms. Dangerfield a duty to use reasonable care in manufacturing, modifying and/or altering, fabricating, designing, packaging, shipping, selling and/or distributing the subject shoe covers which were specifically designed and marketed as safe and suitable footwear.

24. Defendants (either individually or in combination) breached these duties and were negligent in the following acts or omissions:

- Defendants negligently manufactured, modified and/or altered, fabricated, designed, packaged, shipped, sold and/or distributed the subject shoe covers in such condition that they failed to allow the end user to safely ambulate while using them in a foreseeable manner;

- Defendants negligently caused to place into the stream of commerce the subject shoe covers in a manner so eminently dangerous and inherently defective that users of the subject shoe covers could not appreciate the dangers associated with their use; and,

- Defendants failed to make reasonable inspections and tests, and failed to instruct, warn and/or follow reasonable quality control procedures to discover the defects, dangers, and hazards presented by the subject shoe covers which Defendants manufactured, modified and/or altered, fabricated, designed, packaged, shipped, sold and/or distributed.

25. Defendants' negligence (either individually or in combination) as described herein directly and proximately caused the injuries sustained by Ms. Dangerfield.

## COUNT III
### (Strict Product Liability – All Defendants)

26. Plaintiff repeats and incorporates here by reference the allegations contained in paragraphs 1 through 25 of this Complaint as if set forth herein verbatim.

27. Defendants (either individually or in combination) designed, manufactured, sold, serviced, distributed and/or placed into the stream of commerce the subject shoe covers, which were used by Ms. Dangerfield in the manner for which they were designed, manufactured and marketed by Defendants.

28. The subject shoe covers used by Ms. Dangerfield were unreasonably dangerous from the time they were designed, manufactured and marketed until Ms. Dangerfield sustained the serious injuries described herein insofar as they reduced or eliminated the slip resistance provided by the end user's traditional footwear and exposed the end user to said serious injuries.

29. Defendant Concordance had actual knowledge of the defective nature of the subject shoe covers as described herein and, despite having that knowledge, distributed the subject shoe covers to the VA Hospital for the use of Ms. Dangerfield, whose serious injuries are the direct and proximate result of the defect.

30. Defendants (either individually or in combination) are strictly liable for the injuries sustained by Ms. Dangerfield.

## COUNT IV
### (Punitive Damages – All Defendants)

31. Plaintiff repeats and incorporates here by reference the allegations contained in paragraphs 1 through 30 of this Complaint as if set forth herein verbatim.

32. Defendants (either individually or in combination) knew or should have known that the subject shoe covers used by Ms. Dangerfield were unreasonably dangerous from the time they were designed, manufactured and marketed until Ms. Dangerfield sustained the serious injuries described herein.

33. The manufacture and distribution of the subject shoe covers—particularly the advertising of the subject shoe covers as skid resistant despite conducting no testing to verify this claim—amounts to a willful, wanton and reckless conduct and shows gross indifference on the part of Defendants, and were of such an egregious nature and with such disregard to life and limb that Ms. Dangerfield is entitled to an award of punitive damages in addition to other damages alleged herein.

34. As a direct and proximate result of the gross disregard of Defendants (either individually or in combination) as described herein, Ms. Dangerfield is entitled to recover both compensatory and punitive damages from Defendants (either individually or in combination) in an amount to be determined by a jury.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, for:

　　a. an amount of compensatory damages determined by a jury according to the laws of the State of West Virginia;

　　b. an amount of punitive damages determined by a jury according to the laws of the State of West Virginia;

    c. costs and attorney fees expended in prosecution of this matter;

    d. pre-judgment and post-judgment interest as provided under the law; and

    e. any and all other relief to which the Court deems Plaintiff is entitled.

**PLAINTIFF DEMANDS A JURY TRIAL**

                                          **MELINDA A. DANGERFIELD**
                                          **By Counsel**

/s/ L. Lee Javins II
L. Lee Javins, II (WVSB No. 6613)
David A. Bosak (WVSB No. 11947)
BAILEY JAVINS & CARTER LC
213 Hale Street
Charleston, West Virginia 25301
Telephone: (304) 345-0346
Facsimile: (304) 345-0375
ljavins@bjc4u.com
dbosak@bjc4u.com
   *Counsel for Plaintiff*