IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**MELINDA A. DANGERFIELD,**

    **Plaintiff,**

v.                                         Civil Action No.: 3:22-cv-00088
                                          Honorable Robert C. Chambers

**ASPEN SURGICAL PRODUCTS, INC.,**
a Michigan Corporation, and
**ICP MEDICAL, LLC,**
a Delaware Limited Liability Company,

    **Defendants.**

## AMENDED COMPLAINT

Plaintiff Melinda A. Dangerfield states as follows for her *Amended Complaint* against the Defendants:

### PARTIES

1. Plaintiff Melinda A. Dangerfield is, and at all times relevant herein was, a resident and citizen of Putnam County, West Virginia.

2. Defendant Aspen Surgical Products, Inc. ("Aspen") is a Michigan corporation with its principal place of business in Caledonia, Kent County, Michigan, and at all relevant times, was in the business of designing, manufacturing, re-manufacturing, modifying and/or altering, fabricating, packaging, shipping, selling, servicing, and/or distributing "non-skid" disposable shoe covers through its BlueMed Medical Supplies brand in the State of West Virginia, including but not limited to the subject ICP-SCNS0003 Universal shoe covers (the "subject shoe covers"). Upon information and belief, Defendant Aspen acquired BlueMed Medical Supplies in March of 2021 and, in doing so, assumed responsibility for product liability claims involving products assembled or sold by BlueMed Medical services which caused injuries after the date of acquisition.

3. Defendant ICP Medical, LLC ("ICP") is a member-managed Delaware limited liability company with membership residing in the State of Tennessee. At all relevant times, ICP was in the business of selecting, packaging, shipping, selling, and/or distributing "non-skid" disposable shoe covers to health care providers, including the Herhel "Woody" Williams VA Medical Center in Huntington, West Virginia (the "Hospital"). At all relevant times, ICP had actual knowledge of the defect in the subject shoe covers, which is the proximate cause of the harm for which recovery is sought in this matter. Additionally, ICP branded the shoe covers as an ICP product, does not identify Aspen in its shoe cover labels, independently packages the shoe covers and offers an independent warranty thereon.

## JURISDICTION and VENUE

4. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000.00, exclusive of costs and interest, and involves citizens of different states.

5. Defendants availed themselves to the jurisdiction of this Court pursuant to W. Va. Code § 56-3-33 and W. Va. Code § 31D-15-1501(d)(3), by doing, personally and through its agents, the following acts:

    a. Committing a tortious act within this state by selling and/or delivering a defective product for placement into the West Virginia stream of commerce for ultimate users;

    b. By selling, distributing, assembling and/or servicing its products, including the subject shoe covers, to or for persons, firms and/or corporations in this state *via* its distributors, wholesalers, and brokers. Such products, including the subject shoe covers, were used by West Virginia consumers in the ordinary course of commerce and trade;

    c. By deriving substantial revenues in this state;

  d.  The acts or omissions of the Defendants caused injuries to persons in West Virginia, including Ms. Dangerfield;

  e.  By engaging in the solicitation of activities in West Virginia to promote the sale, consumption, use, maintenance and distribution of Defendants' products, including the subject shoe covers, which is the subject of this Complaint; and

  f.  By selling, distributing or assembling Defendants' products, including the subject shoe covers which are the subject of this Complaint, with knowledge or reason to foresee that Defendants' products, including the subject shoe covers, would be shipped in interstate commerce and would reach the market of West Virginia users or consumers.

6. Venue is proper in the United States District Court for the Southern District of West Virginia pursuant to 28 U.S.C. § 1391(a) as a substantial portion of the events giving rise to the claims herein took place in Cabell County, West Virginia, which is within the judicial district of this Court.

**FACTS**

7. On a date prior to the subject incident, the United States Department of Veterans Affairs ("VA") awarded a Federal Supply Schedule ("FSS") contract to ICP, whereby ICP was to identify, select, and distribute medical equipment and supplies, including non-skid shoe covers, to the VA pursuant to the VA's specifications.

8. Ms. Dangerfield is a registered nurse who, at all relevant times, was employed at the Hospital.

9. As a result of the Covid pandemic, the Hospital had a dedicated Covid ward where Ms. Dangerfield would regularly work and provide care to patients diagnosed with Covid.

10. To contain the spread of Covid and to prevent injuries to personnel, the Hospital required Covid ward staff to wear extensive, single-use personal protective equipment, including

"non-skid" shoe covers. This personal protective equipment, including the shoe covers, was provided by the Hospital to its personnel on a daily basis.

11. Prior to the subject incident, pursuant its FSS contract with the VA and the VA's specifications for non-skid shoe covers, ICP selected, sold, packaged, and distributed the subject BlueMed Medical Supplies ICP-SCNS0003 Universal shoe covers manufactured by Aspen. Defendant ICP brands the subject shoe covers as ICP shoe covers, does not identify Aspen in its shoe cover labels, independently packages the shoe covers, and offers an independent warranty thereon.

12. While the subject shoe covers are marketed and described as having a "non-skid pattern," and "great slip resistance," Defendants were aware at all relevant times that the subject shoe covers were defective insofar as they failed to provide adequate slip resistance and/or traction. Defendants had received customer complaints prior to the subject incident regarding this defect, including a 2016 customer complaint by the VA's William Beaumont Medical Center, whereby ICP was instructed to no longer purchase Aspen / BlueMed Medical Supplies non-skid shoe covers given their failure to provide slip resistance.

13. Upon information and belief, the subject shoe covers were never tested to determine the slip resistance they provided to the end user, as measured by the coefficient of friction ascertainable through established testing procedures.

14. Despite their knowledge that the subject shoe covers were never tested to determine slip resistance, and despite their knowledge of customer complaints concerning the subject shoe covers' defective nature, Defendants nevertheless designed, manufactured, selected, sold and distributed the subject shoe covers to the VA without warnings regarding the subject shoe cover's

defect, and the potential loss of slip resistance otherwise provided by the end user's traditional footwear.

15. On June 28, 2021, Ms. Dangerfield began her night shift in the Covid ward at the Hospital. At the beginning of her shift, Ms. Dangerfield put on the subject shoe covers, as was required for the Covid ward. The subject shoe covers enclosed her traditional shoes, which were slip-resistant work shoes manufactured by Crocs. Upon information and belief, Ms. Dangerfield's Crocs had been tested and found to provide significant slip resistance for the end user. As such, when Ms. Dangerfield put the subject shoe covers over her Crocs, the effective slip resistance provided by her footwear was reduced.

16. As the shift progressed into June 29, 2021, Ms. Dangerfield was in a patient's room collecting food trays. As she went to turn around, she planted her left foot. Despite the subject shoe covers being advertised as "non-skid," the subject shoe covers failed to provide sufficient, if any, slip resistance, causing Ms. Dangerfield's left foot to slip out from underneath her. Ms. Dangerfield fell hard on her left side.

17. As a direct and proximate result of the fall, Ms. Dangerfield suffered severe injuries, including but not limited to impact injuries to her left hip and shoulder, and damage to her left ulnar nerve. As a result of the nerve damage, Ms. Dangerfield lives with consistent pain and numbness in her left hand, ranging from the tips of her fingertips up the left arm.

18. As the injuries set forth herein were caused by the conduct of the Defendants, Defendants are liable to Plaintiff for all damages, including but not limited to:

    a.    pain and suffering, including mental anguish and psychological injuries;

    b.    past and future medical expenses;

    c.    past and future lost income and earning capacity;

      d.      past and future lost services, protection, care and assistance;

      e.      loss of society, companionship, and consortium; and,

      f.      other damages incurred as a result of Defendants' conduct.

## COUNT I
### (Breach of Warranty – All Defendants)

19. Plaintiff repeats and incorporates here by reference the allegations contained in paragraphs 1 through 18 of this Complaint as if set forth herein verbatim.

20. Defendants, at all times material hereto, both explicitly and by and through the sale of the subject shoe covers, expressly and impliedly warranted to users through their actions, representations, promises, affirmations, promotions, product literature, photographs and promotional material, to all prospective consumers and the public generally, including Ms. Dangerfield, that the subject shoe covers which Defendants (individually or in combination) designed, manufactured, sold, marketed and/or distributed was of such quality and reasonably fit for the purpose of serving as safe and suitable footwear.

21. Ms. Dangerfield made use of the subject shoe covers as alleged herein and relied on the express and implied warranties made by Defendants through their actions, representations, promises, affirmations, promotions, product literature, photographs and promotional material that the subject shoe covers were fit for the purpose of serving as a safe and suitable footwear.

22. Defendants breached their express and implied warranties of fitness and merchantability by defectively designing, manufacturing, selling, marketing and/or distributing the subject shoe covers which were unreasonably dangerous for the use to which they were intended as reflected throughout Defendants' actions, representations, promises, affirmations, promotions, product literature, photographs and promotional material.

23. Defendants further breached their express and implied warranties of fitness and merchantability by failing to warn and/or instruct users, purchasers, the public, and others, including Ms. Dangerfield, concerning the dangerous characteristics of the subject shoe covers when used in a reasonably foreseeable manner.

24. Defendants' breach of warranties (either individually or in combination) as described herein directly and proximately caused the injuries sustained by Ms. Dangerfield.

## COUNT II
**(Negligent Design, Manufacture, Warning and Distribution – All Defendants)**

25. Plaintiff repeats and incorporates here by reference the allegations contained in paragraphs 1 through 24 of this Complaint as if set forth herein verbatim.

26. Defendants owed Ms. Dangerfield a duty to use reasonable care in manufacturing, modifying and/or altering, fabricating, designing, packaging, shipping, selling and/or distributing the subject shoe covers which were specifically designed and marketed as safe and suitable footwear.

27. Defendants (either individually or in combination) breached these duties and were negligent in the following acts or omissions:

- Defendants negligently manufactured, modified and/or altered, fabricated, designed, packaged, shipped, sold and/or distributed the subject shoe covers in such condition that they failed to allow the end user to safely ambulate while using them in a foreseeable manner;

- Defendants negligently caused to place into the stream of commerce the subject shoe covers in a manner so eminently dangerous and inherently defective that users of the subject shoe covers could not appreciate the dangers associated with their use; and,

- Defendants failed to make reasonable inspections and tests, and failed to instruct, warn and/or follow reasonable quality control procedures to discover the defects, dangers, and hazards presented by the subject shoe covers which Defendants manufactured, modified and/or altered, fabricated, designed, packaged, shipped, sold and/or distributed.

28. Defendants' negligence (either individually or in combination) as described herein directly and proximately caused the injuries sustained by Ms. Dangerfield.

## COUNT III
### (Strict Product Liability – All Defendants)

29. Plaintiff repeats and incorporates here by reference the allegations contained in paragraphs 1 through 28 of this Complaint as if set forth herein verbatim.

30. Defendants designed, manufactured, sold, serviced, distributed, marketed, and/or placed into the stream of commerce the subject shoe covers, which were used by Ms. Dangerfield in the manner for which they were designed, manufactured and marketed by Defendants.

31. The subject shoe covers used by Ms. Dangerfield were unreasonably dangerous from the time they were designed, manufactured and marketed until Ms. Dangerfield sustained the serious injuries described herein insofar as they reduced or eliminated the slip resistance provided by the end user's traditional footwear and exposed the end user to said serious injuries.

32. Defendants Aspen and ICP had actual knowledge of the defective nature of the subject shoe covers as described herein and, despite having that knowledge, selected, sold, and distributed the subject shoe covers to the Hospital for the use of Ms. Dangerfield, whose serious injuries are the direct and proximate result of the defect.

33. At the time the subject shoe covers left the control of the Defendants, safer alternative designs existed which would have made the subject shoe covers safer and would have prevented Ms. Dangerfield from being injured without substantially impairing the subject shoe covers' utility. These safer alternative designs were economically and technologically feasible at all relevant times.

34. The subject shoe covers were further rendered not reasonably safe insofar as theu did not provide warnings commensurate with the gravity of the hazards presented by using the subject shoe covers with defects, including their failure to provide adequate slip resistance and/or traction. The Defendants failed to provide these warnings to consumers, either at or after the time that the subject shoe covers left Defendants' control.

35. A reasonably prudent manufacturer and seller should have included adequate warnings about the hazards associated using the subject shoe covers with defects as described above.

36. Users of the subject subject shoe covers, such as Plaintiff, did not know and should not have been expected to know of the subject shoe covers' failure to provide adequate slip resistance and/or traction.

37. As a direct and proximate result of the defective design associated with the foreseeable use of the subject shoe covers, and Defendants' failure to warn Plaintiff of the subject shoe covers' defect, the Defendants are strictly liable to the Plaintiff for the injuries and damages described herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against the Defendants for such an amount as will be determined by a jury according to the laws of the State of West Virginia, including compensatory damages, punitive damages for Defendants' intentional, fraudulent, malicious and/or reckless indifference to the safety of the Plaintiff, pre-judgment and post-judgment interest, reasonable costs, attorney's fees, and for such other relief as the Court may deem just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL.**

                                                              **MELINDA A. DANGERFIELD,**
                                                              **By Counsel,**

    /s/ L. Lee Javins II
L. Lee Javins, II (WVSB No. 6613)
David A. Bosak (WVSB No. 11947)
Taylor M. Norman (WVSB No. 13026)
BAILEY JAVINS & CARTER LC
213 Hale Street
Charleston, West Virginia 25301
Telephone: (304) 345-0346
Facsimile: (304) 345-0375
ljavins@bjc4u.com
dbosak@bjc4u.com
tnorman@bjc4u.com