IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MELINDA A. DANGERFIELD,

          Plaintiff,

v.                                        CIVIL ACTION NO.  3:22-0088

MITA INVESTMENTS, INC.,
a Canadian Corporation, and
ICP MEDICAL, LLC,
a Delaware Limited Liability Company,

          Defendants.

**MEMORANDUM OPINION & ORDER**

Before the Court is Defendant Mita Investments, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction ("Def.'s Mot."). *See* ECF No. 98. Upon consideration, the Court **GRANTS** the motion. However, before the Court dismisses this case, it requests further briefing on the prospect of transfer under 28 U.S.C. § 1631.[1]

**BACKGROUND**

Melinda Dangerfield is a registered nurse at Herhel "Woody" Williams Veterans Affairs Medical Center in Huntington, West Virginia. *See* Second Am. Compl. ¶¶ 1, 4, ECF No. 64. One day at work, she slipped and "fell hard on her left side" while wearing hospital-issued shoe covers. *Id.* ¶ 17. She injured her left hip, shoulder, and left ulnar nerve. *See id.* ¶ 18. Dangerfield sued. In

---

[1] The Court also considered Defendant's Memorandum of Law in Support of their Motion to Dismiss for Lack of Personal Jurisdiction ("Def.'s Mem."), ECF No. 99; Plaintiff's Memorandum in Opposition to Mita Investments, Inc.'s Motion to Dismiss ("Pl.'s Resp."), ECF No. 106; Defendant's Reply in Support of Defendant Mita Investments, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction ("Def.'s Reply"), ECF No. 108.

her Second Amended Complaint, she alleges ICP Medical, LLC distributed a defective shoe cover manufactured by Mita Investments, Inc. to her hospital in West Virginia *See id.* ¶¶ 8, 12.

\* \* \*

Mita Investments, Inc. is a Canadian corporation headquartered in Montreal. *See id.* ¶ 2. It designs, manufactures, and distributes shoe covers. *See id.* Mita initially sold shoe covers only in Canada. *See* Pl.'s Resp., Ex. A at 21:21–22:6 (Kassar Dep.), ECF No. 106-1. But after initial success, Mita decided to access the American markets. *See id.* at 42:5–14 (calling this decision a "logical expansion"). Mita then visited trade shows in California, Illinois, Massachusetts, New York, and Texas. *See id.* at 43:7–10. It did not visit West Virginia. *See id.* at 45:7–9.

Eventually, Mita met ICP—a Delaware LLC with membership in Tennessee. *See* Second Am. Compl. ¶ 4; Pl.'s Resp., Ex. B at 48:10–22 (Macleod Dep.), ECF No. 106-2. The two corporations entered an agreement. Under their agreement, Mita sold shoe covers to ICP in Missouri. *See* Def.'s Mem., Ex. B ¶ 13. ICP then distributed the shoe covers under private label throughout the United States. *See* Second Am. Compl. ¶ 4. ICP branded and labeled Mita shoe covers as ISP products, independently packaged Mita shoe covers, and offered consumers an ISP—not Mita—warranty. *See id.* ¶¶ 4, 12.

At some point, ICP sent a shoe cover to Dangerfield's hospital pursuant to a U.S. Department of Veterans Affairs' federal supply schedule contract. *See id.* ¶¶ 8, 12. Whether Mita knew ICP serviced veterans' hospitals—including in West Virginia—is unclear. *See* Kassar Dep. at 51:10–52:13 (presenting conflicting responses); Macleod Dep. at 139:2–22 (similar).

\* \*\*

In February 2022, Dangerfield filed suit. In her complaint, Dangerfield named ICP and Concordance Healthcare Solutions, LLC as defendants. *See* Compl. ¶¶ 2–3, ECF No. 1. In July

2022, she dropped Concordance and added Aspen. *See* Am. Compl. ¶¶ 2–3, ECF No. 27. In December 2022, she added Mita. *See* Second Am. Compl. ¶ 2. All said, Dangerfield currently names Mita, Aspen, and ICP as defendants. *See id.* ¶¶ 2–4.[2]

On January 9, 2023, ICP filed a crossclaim against Mita. *See* ECF No. 73. It alleged any of its liability is "secondary to the primary liability" of Mita. *Id.* at 13 ¶ 7. Should Dangerfield succeed, Mita would be liable to ICP through indemnification and contribution. *See id.* ¶ 8.

On April 20, 2023, Mita executed a Waiver of Service. *See* ECF No. 76. In the waiver, Mita "ke[pt] all defenses or objections to . . . the court's jurisdiction." *Id.* at 1.

On July 5, 2023, Mita filed its answer to Dangerfield's Second Amended Complaint. *See* ECF No. 78. There, Mita asserted it is "not subject to personal jurisdiction in West Virginia" because it "lacks sufficient minimum contacts with the forum state." *Id.* at 13.

On July 13, 2023, Mita participated in a Rule 26(f) conference. *See* ECF No. 79.

On July 20, 2023, Mita filed an Amended Answer. *See* ECF No. 64. Mita again asserted it is "not subject to personal jurisdiction in West Virginia" because it "lacks sufficient minimum contacts with the forum state." *Id.* at 13. Mita also filed an Answer to ICP's crossclaim. *See* ECF No. 84. Mita "adopt[ed] and incorporate[ed]" all affirmative defenses referenced in its answer to Dangerfield's Second Amended Complaint—including personal jurisdiction. *See id.* at 3.

On August 31, 2023, Mita shared Rule 26(a)(1) Initial Disclosures and its Objections & Responses to Plaintiff's First Set of Interrogatories, Requests for Production, and Requests for Admission. *See* ECF Nos. 87, 88. Mita amended its Objections in November. *See* ECF No. 91.

On October 9, 2023, Mita participated in ICP's deposition of Dangerfield. *See* ECF No. 4. *See also* Pl.'s Resp. at 6. It took sixty-four pages of testimony. *See* Pl.'s Resp. at 6.

---

[2] Dangerfield dismissed its claims against Aspen. *See* ECF No. 95 at 1. Aspen and ICP then dismissed their crossclaims against one another. *See id.*

On November 9, 2023, Dangerfield noticed depositions of Liz Macleod—an ISP representative—and Michael Kassar—a Mita representative. *See* ECF Nos. 93, 94. Dangerfield scheduled Kassar's deposition for November 29, 2023.

On November 27, 2023, Mita filed the pending motion. *See* ECF No. 98.

## LEGAL STANDARD

A plaintiff bears the burden of demonstrating personal jurisdiction "at every stage following the defendant's jurisdictional challenge." *Sneha Media & Ent. LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 196–97 (4th Cir. 2018) (cleaned up).

When a defendant challenges personal jurisdiction only on "motions papers, supporting legal memoranda[,] and the relevant allegations of a complaint," the plaintiff must make a "prima facie showing" of personal jurisdiction. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). In contrast, when the Court provides the parties a "fair opportunity" to present "both the relevant jurisdictional evidence and their legal arguments," the plaintiff must prove personal jurisdiction by a preponderance of the evidence. *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016).

In both cases, the Court construes all pleading allegations in the plaintiff's favor, assumes its credibility, and draws the "most favorable" inferences for the "existence of jurisdiction." *In re Celotex*, 124 F.3d 619, 628 (4th Cir. 1997) (quotation omitted).

The Court need not decide which evidentiary standard applies because Dangerfield fails to prove a prima facie showing of personal jurisdiction. *See infra* Part II; *Wallace v. Yahama Motors Corp., U.S.A.*, 2022 WL 61430, at *1 n.1 (4th Cir. Jan. 6, 2022) (reaching similar conclusion).

## ANALYSIS

Mita's Motion to Dismiss raises three issues. *First*, the parties dispute whether Mita waived its right challenge personal jurisdiction. *Compare* Pl.'s Resp. at 8–12 *with* Def.'s Reply at 2–4. *Second*, the parties dispute whether Mita purposefully availed itself of West Virginia. *Compare* Def.'s Mem. at 8–13 *with* Pl.'s Resp. at 12–17. *Finally*, the parties dispute whether transfer is proper should no personal jurisdiction exist. *Compare* Pl.'s Resp. at 17–18 *with* Def.'s Reply at 8–9. The Court considers each dispute in turn.

## I

The Court begins with waiver. Under Fed. R. Civ. P. 12(h)(2), a defendant must assert lack of personal jurisdiction in its first responsive pleading to avoid waiver. *See Int'l Union v. Consol Energy, Inc.*, 243 F. Supp. 3d 755, 760 (S.D. W. Va. 2017). Rule 12(h), however, sets only the "outer limits of waiver." *Hager v. Graham*, 2010 WL 753242, at *1 (N.D. W. Va. 2010) (quotation omitted). When a defendant indicates a "willingness to defend the suit," it waives its personal jurisdiction defense. *In re: Ethicon, Inc., Pelvic Repair Sys. Products Liability Litig.*, 2016 WL 1718826, at *2 (S.D. W. Va. Apr. 7, 2016).

Determining waiver is "more [an] art than a science." *Boulger v. Woods*, 917 F.3d 471, 477 (6th Cir. 2019). No "bright line[s]" exist. *Edwards v. Clinical Solutions*, 2020 WL 7249906, at *3 (D.S.C. Oct. 16, 2020). Instead, courts "consider the degree of participation in the litigation" including appearances, requests for reliefs, and participation in hearings or discovery. *Id.* If the defendant's participation reveals a "manifest intent to submit to the court's jurisdiction," the defendant violates the "spirit" of Rule 12(h) notwithstanding a timely Rule 12(b)(2) motion. *Blankenship v. Boston Globe Media Partners, LLC*, 2022 WL 329121, at *4 (S.D. W. Va. 2022).

Mita can assert its personal jurisdiction defense. It did not waive the defense. Start with its Waiver of Service on April 20, 2023. There, Mita "ke[pt] all defenses or objections to . . . the court's jurisdiction." ECF No. 76 at 1. Consider next its first answer on July 5, 2023. There, Mita stressed it is "not subject to personal jurisdiction in West Virginia" because it "lacks sufficient minimum contacts with the forum state" in its twenty-seventh affirmative defense. ECF No. 78 at 13. These filings show an intent to challenge personal jurisdiction.

Nothing after July 5th contradicts this intent. When Mita filed an Amended Answer, it again asserted it is "not subject to personal jurisdiction in West Virginia" because it "lacks sufficient minimum contacts with the forum state." ECF No. 64 at 13. When Mita filed an answer to ICP's crossclaim, it "adopt[ed] and incorporate[ed]" all affirmative defenses referenced in its Amended Answer—including its personal jurisdiction defense. *See* ECF No. 84 at 3. These assertions make clear Mita wanted to keep its right to challenge personal jurisdiction. They do not give any party or the Court a "reasonable expectation" Mita intended to defend the case on the merits. *Freedom Hawk Kayak, LLC v. Ya Tai Elec. Appliances*, 908 F. Supp. 2d 763, 768 (W.D. Va. 2012).

Dangerfield rebuts. *First*, she argues Mita's participation in early discovery constitutes the "epitome" of "active participation" in litigation "while failing to raise the defense of personal jurisdiction." Pl.'s Resp. at 12. She cites Mita's participation in the parties' Rule 26(f) conference, its Rule 26(a)(1) initial disclosures, its Objections & Responses to Plaintiff's First Set of Interrogatories, its crossclaim against ICP, and its participation in Dangerfield's deposition. *See id.* at 11–12. *See also* ECF Nos. 79, 87, 88, 90.

Dangerfield reads too much into these actions. Parties must participate in a Rule 26(f) conference and share initial disclosures. *See* Fed. R. Civ. P. 26(f)(1) (requiring parties to "confer as soon as practicable"); Fed. R. Civ. P. 26(a)(1) (requiring parties to share certain information

"without awaiting a discovery request"). Parties must respond to a set of interrogatories from an opponent within thirty days. *See* Fed. R. Civ. P. 33(b)(2). In other words, Mita had little choice but to participate in these activities. To hold actions required under the Federal Rules of Civil Procedure against a defendant ignores waiver's focus on the defendant's voluntary actions. As such, the Court disregards these acts in its analysis. *See, e.g.*, *Special Quality Alloys, Inc. v. Coastal Mach. & Supply*, 2023 WL 7412945, at *3 (S.D. Tex. Nov. 9, 2023) (holding participating in a Rule 26(f) conference does not waive personal jurisdiction); *Montante v. Boyd Bros. Transp. Co.*, 2021 WL 4954320, at *1 (M.D. Ala. Oct. 25, 2021) (similar holding for initial disclosures). *Cf. Mallory v. Norfolk S. Railway Co.*, 600 U.S. 122, 145 (2023) ("Failing to comply" with pre-trial orders can carry "profound consequences for personal jurisdiction.").[3]

The Court admits Mita's participation in Dangerfield's deposition is extensive—sixty-four pages of testimony likely covers several topics. *See* Pl.'s Resp. at 6. But ICP—not Mita—initiated the deposition. *See* ECF No. 89. A defendant does not waive personal jurisdiction by participating in a deposition noticed by *another* party. *See S.D. Trading Academy, LLC v. Aafis Inc.*, 2007 WL 3220167, at *5–*6 (S.D. Tex. Oct. 26, 2007) (holding a defendant did not waive personal jurisdiction even though the defendant *itself* provided deposition testimony).

The Court also admits Mita's crossclaim suggests it wants *this* Court to hear its claims. But Mita did not spontaneously file a crossclaim against ICP. Instead, ICP made the first move. *See* ECF No. 73. When ICP answered Dangerfield's Second Amended Complaint, it argued Mita should pay ICP through indemnification and contribution if Dangerfield succeeds. *See id.* at 13 ¶ 8.

---

[3] Of course, after Mita filed its Motion to Dismiss, it participated in more extensive discovery. *See, e.g.*, ECF No. 104 (Mita's First Combined Discovery Requests). These actions, however, do not impact the waiver analysis. *See SNMP Rsch., Inc. v. Broadcom Inc.*, 2021 WL 2636011, at *7 (E.D. Tenn. June 25, 2021) ("Defendants' participation in discovery while their motions to dismiss are pending (including propounding their own discovery) or the entry of a protective order will not be construed as a waiver of their personal jurisdiction or improper venue defenses").

Mita disagreed. So it filed a crossclaim against ICP. *See* ECF No. 84. Of course, there are no mandatory crossclaims. *See* Fed. R. Civ. P. 13(a), (b) (distinguishing between only compulsory and permissive counterclaims). But filing a counterclaim—whether compulsory *or* permissive—does not waive a party's objections to personal jurisdiction. *See, e.g.*, *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 540 (5th Cir. 2019); *Hillis v. Heineman*, 626 F.3d 1014, 1018 (9th Cir. 2010); *Rates Tech. Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1308 (Fed. Cir. 2005); *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1512 (3d Cir. 1994). The Court finds no reason to forge new ground for defensive crossclaims.

*Next*, Dangerfield argues Mita's decision to waive service of process works against it. *See* Pl.'s Resp. at 12. Not so. When a defendant is aware of untimely service of process but fails to raise the issue, the defendant waives a personal jurisdiction based on untimely service. *See In re: Ethicon, Inc., Pelvic Repair Sys. Products Liab. Litig.*, 2016 WL 1718826 at *2 (relying on *Pusey v. Dallas Corp.*, 938 F.2d 498 (4th Cir. 1991)). This truism is inapplicable here. When Mita first appeared through its Waiver of Service, it challenged this Court's jurisdiction. *See* ECF No. 76 at 1. Moreover, its arguments against personal jurisdiction are based on purposeful availment—not improper service of process. *See* Def.'s Mem. at 8–13.

*Finally*, Dangerfield's citations are unpersuasive. In *Blankenship v. Boston Globe Media Partners, LLC*, the Court found waiver after defendant entered multiple stipulations, filed two motions to compel discovery, engaged in motions practice, and filed a summary judgment motion. *See* 2022 WL 329121 at *4. Ultimately, the defendant waited two years to litigate personal jurisdiction. *See id.* In *Hager v. Graham*, the Court found waiver after a defendant removed a case from state court, filed a motion to lift a stay of the proceedings, and requested the court recognize a state court default judgment shielding them from liability. *See* 2010 WL 753242, at *3.

Ultimately, the defendant waited two years to raise its personal jurisdiction defense. *See id.* Neither case is comparable to this one. Mita alerted Dangerfield of its personal jurisdiction defense in its Waiver of Service in April 2023 and its first Answer in July 2023. Just seven months passed before Mita's filed its Motion to Dismiss. During this time, Mita participated sparingly in this case.

Dangerfield makes much of Ford Motor Company's behavior in *Bandemer v. Ford Motor Co.*, 592 U.S. 351 (2021). *See* Pl.'s Resp. at 10–12. The Court agrees *Bandemer* represents a model for promptly challenging personal jurisdiction. Ford asserted lack of personal jurisdiction as its second—not twenty-seventh—affirmative defense. *See id.* at 10. Ford "explicitly informed" all parties when it would file its motion for lack of personal jurisdiction. *See id.* The parties then stayed discovery pending a ruling. *See id.* But the ideal should not bar the acceptable. Mita's actions in this case are sufficient to protect its right to challenge personal jurisdiction.

## II

The Court next considers personal jurisdiction. Federal courts are institutions of limited jurisdiction. *See Smartsky Networks, LLC v. DAG Wireless, Ltd.*, 2024 WL 560717, at *4 (4th Cir. Feb. 13, 2024). As a result, they must ensure they have "authority over the parties"—*i.e.* personal jurisdiction. *Rughras AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999). Personal jurisdiction takes two forms: general and specific. *See Ford*, 592 U.S at 358. Mita argues this Court lacks both. *See* Def.'s Mot. at 1. Dangerfield argues this Court has specific jurisdiction over Mita. *See* Pl.'s Mem. at 7. The Court agrees with Mita.

### A

The Court lacks general jurisdiction over Mita. General jurisdiction is "sweeping." *Ford*, 592 U.S. at 358. It extends to "any and all claims" brought against a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). But this "sweeping" power comes with

a "correlative limit." *Ford*, 592 U.S. at 358. A corporation is subject to general jurisdiction only where it is "at home." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2011). A corporation is "at home" in its place of incorporation and principal place of business. *See id.* at 137, 139 n.19 (2011) (leaving the "possibility" a corporation may be "at home" elsewhere in an "exceptional case").

Mita is a Canadian corporation headquartered in Montreal, Canada. *See* Second Am. Compl. ¶ 2; Def.'s Mem., Ex. A ¶ 9. Mita is, therefore, not "at home" in West Virginia. *Daimler*, 571 U.S. at 137. As such, general jurisdiction does not exist here.

## B

The Court also lacks specific jurisdiction over Mita. Specific jurisdiction "covers defendants less intimately connected" with a forum. *Ford*, 592 U.S. at 359. It turns on the "relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014). At base, specific jurisdiction rests on the "affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017) (cleaned up).

A three-part test guides the Court's analysis. *First*, the defendant must purposefully avail itself of the privilege of conducting activities in the forum state. *Second*, the plaintiff's claims must arise out or relate to those activities. *Finally*, the exercise of personal jurisdiction must be constitutionally reasonable. *See Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). A plaintiff must satisfy the first prong before a court will consider the second and third prongs. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

The Court begins and ends with purposeful availment. This inquiry is flexible. *See Universal Leather*, 773 F.3d at 560. The Court looks to see if Mita took "some act by which [it]

purposefully avails itself of the privilege of conducting activity" in West Virginia. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The acts must be Mita's "own choice," *Ford*, 141 S. Ct. at 1025, and not "random, isolated, or fortuitous," *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984). The acts must show Mita "deliberately 'reached out beyond'" its home. *Ford*, 592 U.S. at 359 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

Purposeful availment takes many forms. Maintaining offices or agents in the forum state counts. *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 221 (1957). Owning property in the forum state counts. *See Base Metal Trading, Ltd. v. OJSC*, 283 F.3d 208, 213 (4th Cir. 2002). Soliciting or initiating business in the forum state counts. *See Burger King v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). Contractually agreeing the law of the forum state govern disputes counts. *See id.* at 481–82. Making in-person contact with a resident of the forum state regarding their business counts. *See Hirschkop & Grad, P.C. v. Robinson*, 757 F.2d 1499, 1503 (4th Cir. 1985). Signifying through communications an intent to impact the forum state counts. *See English & Smith*, 901 F.2d 36, 39 (4th Cir. 1990). And performing contractual duties in the forum state counts. *See Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 314 (4th Cir. 1982). In short, there is no one-size-fits-all approach to purposeful availment. It depends on the facts of each case.

The Court finds Mita did not purposefully avail itself of West Virginia. It did not design or manufacture the shoe covers at issue in West Virginia. *See* Def.'s Mem., Ex. A ¶ 14. It did not invoice or ship the shoe cover at issue to the hospital or Dangerfield. *See id. See also* Second Am. Compl. ¶¶ 8, 11–12, 16 (suggesting ICP—not Mita—shipped the shoe cover). It does not maintain offices, agents, or employees in West Virginia. *See* Def.'s Mem., Ex. A. ¶ 10. It does not own property in West Virginia. *See id.* It is not registered to do business in West Virginia. *See id.* It does not derive revenue from West Virginia. *See id.* It does not target advertising or marketing to

consumers in West Virginia. *See id.* ¶ 16. It does not utilize or engage distributors, retailers, or other vendors to sell shoe covers in West Virginia. *See id.* ¶¶ 17–18.

In short, Mita did not affirmatively exploit the West Virginia markets. Instead, it appears Mita had no clue its shoe covers would end up in the Mountain State. *See* Kassar Dep. at 55:7 – 12 (suggesting Mita did "not know where [ICP's] client base is"). *Contrast Ford*, 592 U.S. at 365 ("By every means imaginable—among them, billboards, TV and radio spots, print ads, and direct mail—Ford urges [forum residents] to buy its vehicles."); *Wallace,* , 2022 WL 61430 at *3 (finding "Yamaha purposefully availed itself of South Carolina's market by, among other activities, marketing, advertising, and providing extended service contracts for its products there; permitting authorized Yamaha dealerships to operate there; sponsoring product demonstrations there; and maintaining a membership in the Chamber of Commerce there").

Dangerfield sees things differently. She argues Mita developed "relationships with ICP and other medical supplies distributors in the United States to gain access" to the American markets. Pl.'s Mem. at 13. She argues Mita knew ICP held government contracts and wanted to access the VA hospital network "spanning every state in the union." *Id.* Together, these actions justify specific jurisdiction in West Virginia. They cite *Asahi Metal Industry Co. v. Superior Ct.*, 480 U.S. 102 (1987) for support. *See id.* at 13–14. The Court disagrees for two reasons.

*First*, Dangerfield misreads *Asahi*. There, Justice O'Connor argued merely placing a product into the stream of commerce is not purposeful availment. *See* 480 U.S. 102, 112 (1987) (opinion of O'Connor, J.). Instead, the defendant must take "additional conduct" demonstrating an "intent or purpose to serve the market in the forum State." *Id.* This "additional conduct" may include designing the product for the market in the forum state, advertising in the forum state, establishing channels for providing regular advice to customers in the forum state, or marketing

the product through a distributor who agreed to serve as the sales agent in the forum state. *Id. See also Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 944–45 (4th Cir. 1994) (adopting Justice O'Connor's approach). Collectively, these actions alert consumers in the forum state to the defendant's presence. Mita's actions, however, do not. According to Dangerfield, ICP brands and labels Mita shoe covers as ISP products, independently packages Mita shoe covers as their own, and offers consumers an ICP—not Mita—warranty. *See id.* ¶¶ 4, 12. In essence, ICP strips all references to Mita from the shoe covers. These allegations suggest ICP takes affirmative steps to target West Virginia. They do not say the same for Mita. In short, nothing in Mita's "specifically structured" relationship with ICP demonstrates an intent or purpose to sell Mita shoe covers in West Virginia. *AESP, Inc. v. Signamax, LLC*, 29 F. Supp. 3d 683, 691 (E.D. Va. 2014) (explaining a "defendant's introduction of its product into the stream of commerce by selling products to a distributor selling nationwide is, by itself, an insufficient basis for personal jurisdiction.").

*Second*, whether Mita knew ICP maintained relationships with the nationwide VA hospital network—let alone West Virginia—is immaterial. The record remains murky on this issue. *See* Kassar Dep. at 51:10–52:6 (suggesting Mita did *not* know); *id.* at 52:7–13 (suggesting the opposite); Macleod Dep. at 139:2–22 (suggesting—at most—Mita knew ICP worked with "government contract[s]"). Even assuming Mita knew ICP worked with VA hospitals in West Virginia, the Court struggles to find any case suggesting a defendant can be hauled into a foreign court in a foreign land just because it used a nationwide distributor. In fact, courts repeatedly say the opposite. *See Asahi*, 480 U.S. at 112 (failing to find personal jurisdiction where defendant "did not create, control, or employ the distribution system" that brought the product into the forum state); *Gizzard v. LG Chem. Ltd.*, 641 F. Supp. 3d 282, 290 (E.D. Va. 2022) (holding allegations defendant "suppl[ied] its products to companies" with "operations" in the forum state "fall short"

of proving purposeful availment); *Sutton v. Motor Wheel Corp.*, 2018 WL 2197535, at *5 (D.S.C. May 14, 2018) (explaining defendant's "distribution of its products through a nationwide distributor, without more, is insufficient to create a basis for personal jurisdiction"). This Court joins the chorus. Accepting Dangerfield's theory would empower every state to assert jurisdiction in a products liability suit against any manufacturer who sells its products to a national distributor—"no matter how large or small the manufacturer, no matter how distant the forum, and no matter how few the number of items that end up in the particular forum state." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 891 (2011) (opinion of Breyer, J.). While this might "appear fair" in the case of a large manufacturer, it wreaks havoc on Appalachian potters selling cups and saucers exclusively to a large distributor who in turns sells a single coffee mug to a buyer from Hawaii. *Id.* at 891–92 (emphasizing this "basic fairness" issue becomes even more difficult when the the defendant is a foreign manufacturer). *Cf. Ford*, 592 U.S. at 366 n.4 (referencing a retired guy in small town in Maine selling carved decoys on the Internet).

At base, Dangerfield relies on one party's connections with West Virginia to haul another party into this Court. This form of argument contradicts longstanding principles of specific jurisdiction. *See id.* at 359 (explaining the "contacts must be the defendant's own choice"); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (reaffirming "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum state to justify an assertion of jurisdiction"); *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977) (looking to the relationship between "the *defendant*, the forum, and the litigation") (emphasis added).[4]

---

[4] As a backup, Dangerfield argues Mita is subject to the jurisdiction of the United States district courts because it made nationwide contacts. *See* Pl.'s Mem. at 14–15. Maybe. *See J. McIntyre Mach., Ltd.*, 564 U.S. at 884–85 (opinion of Kennedy, J.) (suggesting "directed marketing and sales efforts at the United States" may subject them to "jurisdiction of the courts of the United States but not of any particular state"). But this argument is misplaced.

In short, the Court finds Mita did not purposefully avail itself of West Virginia markets to justify personal jurisdiction. Accordingly, the Court **GRANTS** Defendant's motion to dismiss.

### III

In the absence of personal jurisdiction, Dangerfield requests this Court transfer this case to the U.S. District Court for the Eastern District of Missouri. *See* Pl.'s Resp. at 17–18. Mita urges for dismissal. *See* Def.'s Reply at 8–9. The Court finds a transfer premature because the parties do not sufficiently brief the issue. As such, the Court requests more briefing as set forth below.

### CONCLUSION

The Court **GRANTS** Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. Before the Court dismisses Mita, however, the Court **DIRECTS** Dangerfield to file any formal motion to transfer by **Friday, March 8, 2024**. Dangerfield should inform the Court whether it wishes the entire case be transferred *or* just her claims against Mita be transferred. *See Pascocciello v. Interboro Sch. Dist.*, 2005 WL 2994296, at *5 (Nov. 8, 2005) (severing and transferring claims against defendants the court lacked personal jurisdiction over). The Court **DIRECTS** Defendants to file a response by **Wednesday, March 13, 2024**. The Court **DIRECTS** Dangerfield to file a reply by **Friday, March 15, 2024**. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: February 29, 2024

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

Dangerfield claims diversity jurisdiction and cites only state-law causes of action *See* Second Am. Compl. ¶¶ 5, 20–37. When a plaintiff cites diversity jurisdiction as its basis for subject matter jurisdiction, the Court looks to the defendant's contacts with the forum *state*—not the Nation. *See, e.g.*, *Kelley v. Am. Checked, Inc.*, 2022 WL 3021129, at *3 (E.D. Va. Jul. 29, 2022) (explaining federal courts look to forum state contacts unless the plaintiff brings a "federal question action based on a statute providing for nationwide jurisdiction").